Nott, J.,
delivered the opinion of the court:
There are two distinct causes of action embraced by this case: the one is a balance alleged to be due upon the charter-party of the steam ferry-boat Tallacca; the other is the value of the barge William E. Hunt, lost in the government service. For the former the damages are laid at $10,000, for the latter at $5,000.
1. With regard to the first: It appears that on November 16, 1862, and during the emergency caused by the removal of the *137 army of the Potomac to Falmouth, the Tallacca was chartered by Captain. C. B. Ferguson, an officer in the Quartermaster’s Department, acting under the instructions of General Pucker, the chief quartermaster at Washington. A charter-party was formally executed, and the agreed compensation named therein was $115 a day.
The boat continued in the service of the government until July 31, 1863. She was paid at the agreed rate up to the last of February, 1863, without objection or question being raised on either side. But on May 13th, the Quartermaster General u disapproved” the charter-party. He at the same time made an order, that the steamboat be paid for “only at the rate of $75 per day so long as she may he retained in the service,” and “ the excess of $40^er day already paid in former settlements” “will he deducted on the present settlement.”
It does not appear in the evidence at what precise time this order was communicated to the claimant; nor whether, on being-notified of it, he determined to allow his boat to remain in the service at the redneed rate, or sought to take her out of it and terminate her employment by the government. It does appear that he was notified soon after Captain Ferguson received the order, and that “ he did not consent to the reduction,” and “offered to file a paper to that purport,” or to receive the money “ under a written protest.” The boat nevertheless remained in the service, with or without his consent, and the deduction of $40 a day from the time her service began was made and subtracted from the subsequent payment.
As to the law applicable to these facts: Two points already have been determined by this court in other cases: 1. “Where a charter-party provides a fixed compensation, the Quartermaster General has no arbitrary power to reduce it,” either as to the period already past when the reduction is ordered, or as to any future period during which “ the vessel is compelled to remain in service against the request of her owner.” (Pratt's Case, 3 C. Cls. R., p. 105.) 2. Where a party allows his vessel to remain in the service after her charter-party has been disapproved by the Quartermaster General, and a reduction of her compensation ordered, he can recover only at the reduced rate. (Emery & Blake's Case, 4 C. Cls. R., p. 401.)
The first of these decisions settles the claimant’s right to *138 recovery tbe second limits that recovery, restricting it to the period prior to his receiving’ notice of the reduction of the compensation, and excluding the period during which he voluntarily allowed his boat to remain in the government’s service with knowledge that her charter-party had been disapproved by the Quartermaster General.
It may be noted that an opinion to the same effect was given subseqently, in a similar case, by Attorney General Evarts. (James T. Sanford’s Claim, December 9, 1868.) In this opinion the Attorney General says, decidedly: “ It was not in the power of the officers concerned with the chartering of the vessel, by their arbitrary will, to impose upon the owner the terms and conditions of any different form of charter-party to which he had never assented.” He adds: “ If the parties had agreed to-rescind the charter-party,” and “had entered into such a contract as that suggested in the circular instructions of the Quartermaster General, with a modified rate of compensation,, the rights and obligations of the parties would have been different-Or, if the government had returned the vessel to the possession of the owner, and he had agreed to any such modified charter as has been mentioned, the government would have been obliged to pay thereafter only in accordance with the stipulations of that charter.”
It is, indeed, asserted that the claimant did not consent to-the boat being retained in the service, and consequently that this is precisely like the case of Pratt, before cited. The clerk who had charge of “ all the government water transportation under Captain Ferguson,” and who has been examined as a witness in the case, talks of the Tallacca having been “retained not a very long time after that in the service;” and he also tells a story of a question having arisen “ whether if the amount due her did not make up the difference for the time for which she had been paid, we should still keep the boat until her accounts should be square at the reduced ratebut seems to .have left the question of the vessel having been detained against the will of her owner, in a state of intended obscurity.
It is contended by the defendants:
1. That the charter-party was valid only for the emergency a point also determined in Emery & Plaice’s Case, (before *139 cited.) But it is needless to consider tbe objection, for if' the boat rendered the government service she wotdd be entitled to a fair compensation; and the evidence indicates that the-compensation agreed upon was reasonable.
2. It is also contended that the owner of the Tallaccawas. guilty of fraud in concealing from Captain Ferguson the fact that the Quartermaster General had some months before ordered, her discharge from the service at $115 a day, and fixed her rate of compensation at $75. But a court cannot impute fraud where no wrong has been done. There is no such thing in law or equity as defrauding a man out of the fair value of the thing sold. Fraud looks to injury, to wrong, to extortion, but where those ingredients are wanting, a man cannot say he has been defrauded out of the reasonable price of the thing bought. In this, case there is nothing to show that the owner sought the transaction. It would be inferred, rather, from the evidence, that the quartermaster sought the vessel. The owner, thus applied to, was not bound to disclose the fact that some time before this-the Quartermaster General had fixed the compensation of his-vessel at a rate which he had declined, nor that the Quartermaster General had forbidden her then being continued in the-service at the rate now agreed upon. Such concealment amid other circumstances might be an important element of fraud; standing alone, it is an immaterial fact.
Upon all the facts relating to this cause of action we are of' the opinion that the claimant should recover the balance of $40-a day, according to the terms of the charter-party, up to the time of his receiving notice of its disapproval by the Quartermaster General. That disapproval bears date at Washington,. May 13, 1863. It then had to be forwarded to Captain Ferguson and by him transmitted to the claimant. A day or two would also intervene before the claimant could go down to Acquia Creek or Fortress Monroe, or Baltimore, (between which places the boat plied,) and take her out of the service..' It may not be unreasonable to extend this time to the end of' the current month, and allow the claimant to recover the pay-withheld up to May 31st.
II. With regard to the second cause of action: The objection is specifically taken by the Assistant Attorney General that “ the claim toas never presented to the War Department for adjustment.V The rules of the court require that “ the petition must *140 set forth a full statement of the claim and of the action thereon * * * by any of the departments.” Also that u in every •case where the claim is such as is ordinarily settled in any executive department, the petition shall show that application for its •allowance has been made to that department, and without success, -and its decision thereonP (Rule II.)
The petitioa here does not comply with these requirements. It alleges, in the language of the rule, that application has been ■made for payment u to the proper departmentf but that is a conclusión of the pleader and not the averment of a material fact. It is pleading the opinion of the xileader and not the circum•stance which the other party may seek to traverse. Moreover, it appears by the return of the Quartermaster General that no ■record of the claim is to be found in his department, and it does mot appear by any testimony of the claimant that the claim has been submitted to any department. As the objection is taken in the brief of the Assistant Attorney General we must conclude that the fact is as it appears to be, and that the suit on ■this cause of action is prematurely brought.
The judgment of the court is that upon the first cause of ■action in the petition set forth the claimant recover $40 a day for the 191 days, amounting to $7,640, and that as to the ■second cause of action in the petition set forth, the petition be .dismissed without prejudice.